Pauline **DAVIS**

v.

**LIBERTY MUTUAL INSURANCE COMPANY.**

Supreme Court of Tennessee, at Knoxville.

Feb. 23, 2001.

David H. Dunaway, LaFollette, TN, for the appellant, Pauline Davis.

James T. Shea, IV, Knoxville, TN, for the appellee, Liberty Mutual Insurance Company.

## OPINION

DROWOTA, delivered the opinion of the Court, in which ANDERSON, C.J., BIRCH, HOLDER and BARKER, JJ., joined.

In this workers' compensation case, the employee, Pauline Davis, has appealed from the trial court's judgment denying her claim for benefits filed against her employer, DeRoyal Industries, Inc. The employee, who worked as a sewing machine operator, was overcome by noxious fumes which she alleges caused a mental injury. On a subsequent occasion the em-

ployee injured her shoulder. The trial court awarded benefits for the shoulder injury but denied benefits for the mental injury. The employee appealed, arguing that she is disabled due to her mental injury. The appeal was argued before the Special Workers' Compensation Appeals Panel pursuant to Tenn.Code Ann. § 50–6–225(e)(3), but transferred to the full Supreme Court prior to the Panel issuing its decision. Three questions are presented for our review: (1) whether the trial judge abused his discretion in not recusing himself, (2) whether the trial court erred in appointing an independent psychiatrist to evaluate the employee, and (3) whether the evidence preponderates against the trial court's finding that the employee failed to prove a work-related psychiatric injury. After carefully examining the record and the relevant authorities, we affirm the trial court's judgment.

### BACKGROUND

The employee, Pauline Davis, is 53–years–old and has an 11th grade education. She was a homemaker for most of her working life. In 1989, she began working in the employer's plant as a sewing machine operator.

On February 11, 1993, the employee was at her work station when she smelled an odor and her eyes and throat began to burn. She got dizzy, passed out, and was taken to a hospital where she was treated for carbon monoxide poisoning. On the same date, the employee inhaled fumes from glue used to put together boots, along with fumes from a concrete sealer which had been used on the employer's premises. The employee was hospitalized for two days and later developed nausea, diarrhea, headaches, a rash, depression, and memory problems. She returned to work a week after the incident. Following a shoulder injury on October 19, 1993, the employee filed suit to recover benefits for that injury, along with her mental injury. Her employment was terminated in June 1994.

The employee was treated or evaluated by several physicians. One of these physicians was Dr. James Lockey, an occupational disease specialist. The employee presented to Dr. Lockey with complaints of memory loss and depression. According to Dr. Lockey, the employee's symptoms were compatible with carbon monoxide exposure and exposure to the glue and concrete sealer used in the employer's plant. Dr. Lockey testified that the employee had a lengthy history of psychiatric problems. He believed that the employee had not sustained any permanent physical impairment as a result of the incident at work on February 11, 1993. He declined to offer an opinion on the employee's mental disability.

The employee was also seen by Dr. Lane Cook, a psychiatrist, complaining of anxiety, panic attacks, fear from being away from home, and depression. Dr. Cook testified that the employee had a 15 year history of depression for which she had taken medication. He assigned a mental impairment rating of 40 percent and believed that the noxious fumes had aggravated the employee's preexisting depression. However, Dr. Cook was not able to determine what portion of the employee's mental impairment was due to the exposures on February 11, 1993.

The employee was evaluated by another psychiatrist, Dr. Jerry Lemler. Dr. Lemler opined that the employee suffered from depression, post-traumatic stress disorder, and a panic disorder. He assessed 75 percent psychiatric impairment. Dr. Lemler was unaware of the employee's lengthy history of psychiatric problems.

Dr. Paul Kelly, also a psychiatrist, was appointed by the trial judge to perform an independent evaluation of the employee. Dr. Kelly believed that the employee—who denied having any prior psychiatric problems—was malingering. He opined that the employee "presented herself falsely in almost every aspect of the examination." According to Dr. Kelly, "[t]his claimant is

grossly exaggerating symptoms that may be present or she is completely making up these symptoms, in my opinion." Dr. Kelly believed that the employee "took advantage of almost every opportunity to embellish, present falsely, and to cast herself in as impaired a light as she possibly could." Dr. Kelly was the only expert to testify who had not been hired by the parties.

The fourth psychiatrist to evaluate the employee was Dr. Kelly Walker. Dr. Walker diagnosed the employee with depression, post-traumatic stress disorder, and a panic disorder. Dr. Walker assessed a mental impairment rating of 40 to 50 percent and did not believe that the employee was malingering. Dr. Walker acknowledged that there were discrepancies in what the employee told the other doctors about her history.

Finally, the employee was evaluated by Dr. Norman Hankins, a vocational disability expert. Dr. Hankins believed that the employee was at least 95 percent vocationally disabled, but if she could improve to where she could do light work her disability would be between 65 and 75 percent.

After considering the evidence, the trial court awarded 25 percent permanent disability to the whole body for the shoulder injury.[1] The trial court declined to award benefits for the psychiatric injury, finding that the "proof offered for the emotional condition is all over the place and falls far short of supporting the [employee's] claim of emotional disability." The trial court also noted that the "credibility of the [employee] left something to be desired." The employee appealed. The appeal was argued before the Special Workers' Compensation Appeals Panel pursuant to Tenn. Code Ann. § 50–6–225(e)(3), but transferred to the full Supreme Court prior to the Panel issuing its decision.

### ANALYSIS

■ The standard of review in a case such as this is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn.Code Ann. § 50–6–225(e)(2). When issues regarding credibility of witnesses and the weight to be given their testimony are before a reviewing court, considerable deference must be accorded the trial court's factual findings. *See Krick v. City of Lawrenceburg,* 945 S.W.2d 709, 712 (Tenn.1997). However, this Court may draw its own conclusions about the weight and credibility of expert testimony when the medical proof is presented by deposition, as it was here, since we are in the same position as the trial judge to evaluate such testimony. *See id.* at 712; *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676–77 (Tenn.1991).

### A. Recusal

■ The first issue we address is whether the trial judge abused his discretion in not recusing himself. Shortly before the proof was introduced at trial, the employee requested that the trial judge, William H. Inman, Sr., recuse himself because Dr. Lemler was one of the employee's experts. The employee believed that Judge Inman was biased against Dr. Lemler based on a previous opinion authored by Judge Inman on behalf of the Workers' Compensation Appeals Panel in an unrelated case, *Seals v. England/Corsair Upholstery Mfg.,* 984 S.W.2d 912 (Tenn.1999). In the Panel's opinion in *Seals,* Judge Inman wrote in a footnote the following concerning Dr. Lemler, who was an expert witness for the employee in that case:

> Dr. Lemler is a board certified psychiatrist who has no inpatient psychiatric practice. He formerly practiced in Alabama, but left that state under something of a cloud when his Group was charged with bilking a federal program. He settled the government's claim against him and surfaced at Peninsula Hospital in Blount County, Tennessee.

---

1. No appeal has been taken as to the shoulder injury.

He left the practice there in June 1995 and went into business for himself by sending 140 marketing letters to lawyers announcing that his services as an expert psychiatrist were available.

Plaintiff's counsel soon hired him, and uses his services to an unusual extent. Dr. Lemler sees and psychiatrically evaluates between 48 and 72 claimants represented by Plaintiff's counsel per year. He charges substantial fees for his services as a forensic psychiatrist. He does not practice psychiatry, and maintains no office, other than as we deduce, a small office in Harrogate where he ostensibly practices family medicine. His evaluations are generally conducted in lawyers' offices.[2]

Dr. Lemler testified in the present case that Judge Inman's characterization of him in the prior unrelated case was "outrageous," "absolutely bogus," and "evil and sinister." Further, Dr. Lemler believed that it was "patently obvious" that Dr. Kelly, the court appointed psychiatrist in the present case, was working against the employee and that "it was certainly possible" that Judge Inman had asked Dr. Kelly to do so. Judge Inman responded to Dr. Lemler's assertions as "nonsense and ultimately self-demeaning."

The employee contends on appeal that Judge Inman's comments about Dr. Lemler in the prior case amounted to a "fabrication of the truth" and were "mean spirited, vicious, and without foundation," which demonstrated his personal bias against Dr. Lemler. The employee thus maintains that the trial judge had an obligation to recuse himself because his "impartiality might reasonably be questioned." Tenn. Sup.Ct.R. 10, Cannon 3(E)(1).

■ Litigants, as the courts have often said, are entitled to the "cold neutrality of an impartial court." *Kinard v. Kinard,* 986 S.W.2d 220, 227 (Tenn.Ct.App.1998). Thus, one of the core tenets of our jurisprudence is that litigants have a right to have their cases heard by fair and impartial judges. *Id.* at 228. Indeed, "it goes without saying that a trial before a biased or prejudiced fact finder is a denial of due process." *Wilson v. Wilson,* 987 S.W.2d 555, 562 (Tenn.Ct.App.1998). Accordingly, judges must conduct themselves "at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary" and "shall not be swayed by partisan interests, public clamor, or fear of criticism." Tenn.Sup.Ct.R. 10, Cannon 2(A), 3(B)(2). As we said many years ago, "it is of immense importance, not only that justice be administered ... but that [the public] shall have no sound reason for supposing that it is not administered." *In re Cameron,* 126 Tenn. 614, 151 S.W. 64, 76 (1912). If the public is to maintain confidence in the judiciary, cases must be tried by unprejudiced and unbiased judges.

■ Given the importance of impartiality, both in fact and appearance, decisions concerning whether recusal is warranted are addressed to the judge's discretion, which will not be reversed on appeal unless a clear abuse appears on the face of the record. *See State v. Hines,* 919 S.W.2d 573, 578 (Tenn.1995). A motion to recuse should be granted if the judge has any doubt as to his or her ability to preside impartially in the case. *See id.* at 578. However, because perception is important, recusal is also appropriate "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Alley v. State,* 882 S.W.2d 810, 820 (Tenn.Crim.

---

**2.** The employee asserts that Judge Inman's comments about Dr. Lemler in *Seals* were based on information contained in Dr. Lemler's discovery deposition taken by the employer in that case, and that the deposition was never introduced as evidence. The employee fails to recognize, however, that Judge Inman's remarks could have just as easily been based on Dr. Lemler's live trial testimony because the same information was elicited from him at trial, both on direct and cross-examination.

App.1994). Thus, even when a judge believes that he or she can hear a case fairly and impartially, the judge should grant the motion to recuse if "the judge's impartiality might reasonably be questioned." Tenn.Sup.Ct.R. 10, Canon 3(E)(1). Hence, the test is ultimately an objective one since the appearance of bias is as injurious to the integrity of the judicial system as actual bias. *See Alley*, 882 S.W.2d at 820. However, the mere fact that a judge has ruled adversely to a party or witness in a prior judicial proceeding is not grounds for recusal. *See Hines*, 919 S.W.2d at 578. Given the adversarial nature of litigation, trial judges necessarily assess the credibility of those who testify before them, whether in person or by some other means. Thus, the mere fact that a witness takes offense at the court's assessment of the witness cannot serve as a valid basis for a motion to recuse. If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartially issue for strategic advantage, which the courts frown upon. *See Kinard*, 986 S.W.2d at 228.

In this case, we are not persuaded that the trial judge's refusal to step aside amounted to a clear abuse of discretion. Dr. Lemler's belief, no matter how genuinely held, that the trial court's assessment of him was a "fabrication of the truth" and was "evil and sinister," along with his belief that the trial judge asked another expert to work against the employee's interest, is not an objectively reasonable basis for questioning the judge's impartiality. *See Alley*, 882 S.W.2d at 820. If anything, such unsupported allegations of bias reflect upon the witness, for there is no evidence to suggest that the trial court's assessment of Dr. Lemler in this case or in

the prior one was somehow malicious as the employee suggests, and certainly no evidence that the trial judge asked anyone to work against the employee's interests. Under this record, it cannot reasonably be questioned that the trial judge was able to render an impartial decision and preside over the case in a neutral and unbiased manner. We can find no improper rulings, remarks, or conduct at trial by the judge that can be attributed to partiality.[3] It is also worth noting that Dr. Lemler was not the only source of the medical proof. He was one of five physicians to testify, and his testimony was substantially similar to that of some of the other doctors. Under these circumstances, it cannot be said that the trial judge abused his discretion in denying the motion to recuse.

### B. Appointment of Independent Physician

■ The second issue is whether the trial court erred in appointing an independent psychiatrist to evaluate the employee. The trial judge appointed Dr. Kelly to perform an independent examination of the employee under Tenn.Code Ann. § 50–6–204(d)(5) "owing to obvious problems with the important issue of credibility." This statute authorizes trial courts, either at the request of the parties or on their own motion, to "appoint a neutral physician of good standing and ability" to conduct an independent medical examination of an employee and report those findings to the court. The employee here asserts that the appointment of Dr. Kelly was improper because Dr. Kelly was not a neutral physician. We disagree. The employee's suggestion that Dr. Kelly was somehow biased or predisposed to offer the opinion he did is unfounded, for there is nothing in the record to suggest that Dr. Kelly was anything other than a neutral psychiatrist. A party's disagreement with

---

**3.** Among other ways, bias or prejudice warranting recusal may be shown where the trial judge expresses an opinion on the merits of a case prior to hearing any evidence, makes comments suggesting the judge has taken a position favorable or unfavorable to a party, or makes remarks indicating that the judge has prejudged factual issues. *See Alley*, 882 S.W.2d at 822. The present case fits none of these circumstances.

the opinions of a court appointed expert is not by itself a valid basis for setting aside the appointment. This issue has no merit.

### C. Sufficiency of Evidence

■ Finally, we must decide whether the evidence preponderates against the trial court's finding that the employee failed to prove a psychiatric injury (i.e., depression, memory loss, fear of being away from home, and panic attacks) caused by her exposure to fumes on February 11, 1993. The trial court declined to award benefits for the mental injury because the proof was "all over the place and falls far short of supporting the [employee's] claim of emotional disability." The trial court cited Dr. Kelly's belief that the employee was malingering. The trial court also took note of the fact that the history given by the employee to the various psychiatrists differed. Indeed, the expert who gave the employee the highest disability rating, Dr. Lemler, was unaware of the employee's lengthy history of mental problems. Finally, the trial judge believed that the employee was not credible.

Based on our review of the record, we agree with the trial court that the medical proof is "all over the place" and thus defer to the trial court's assessment of the case, particularly since the only independent psychiatrist to testify felt that the employee was malingering and "took advantage of almost every opportunity to embellish, present falsely, and to cast herself in as impaired a light as she possibly could." Moreover, we defer to the trial court's assessment of the employee's credibility which, according to the trial court, "left something to be desired." *See Humphrey v. David Witherspoon, Inc.,* 734 S.W.2d 315, 315–16 (Tenn.1987). In short, the evidence does not preponderate against the trial court's denial of benefits for the mental injury.

### CONCLUSION

After carefully reviewing the record and applicable authority, we conclude that the trial judge did not err in failing to recuse himself, did not err in appointing an independent psychiatrist to evaluate the employee, and did not err in denying benefits for the employee's psychiatric injury. The trial court's judgment is affirmed. Costs of this appeal are taxed to the employee.