IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 10, 2018

## STUART ELSEROAD v. KAITLIN COOK

**Appeal from the Circuit Court for Knox County**
**No. 131861  Gregory S. McMillan, Judge**

_____

## No. E2018-00074-COA-T10B-CV

_____

This is an accelerated interlocutory appeal as of right, pursuant to Tennessee Supreme Court Rule 10B, from the trial court's denial of a motion for recusal. Petitioner contends the trial judge should have recused himself because Petitioner "was directly involved in a decision-making process that ultimately resulted in an effect on the [judge's] finances." Petitioner also contends recusal is required because "the Judge based his ruling almost exclusively on his own statements that he was unaware of the Petitioner's involvement in his loan application process," which statements made him "a material witness." Having reviewed the petition for recusal appeal, pursuant to the de novo standard as required under Rule 10B, § 2.01, we affirm the trial court's decision to deny the motion for recusal.

**Tenn. Sup. Ct. R. 10B Accelerated Interlocutory Appeal;**
**Judgment of the Circuit Court Affirmed and Remanded**

FRANK G. CLEMENT JR., P.J., M.S. delivered the opinion of the Court, in which CHARLES D. SUSANO JR. and BRANDON O. GIBSON, JJ., joined.

Darren V. Berg, Knoxville, Tennessee, for the appellant, Stuart Elseroad.

Forrest L. Wallace, Knoxville, Tennessee, for the appellee, Kaitlin D. Cook.

### OPINION

The underlying dispute arises from a divorce proceeding. The plaintiff is Stuart Elseroad ("Petitioner"), and the defendant is Kaitlin Cook ("Defendant").

This appeal arises from the trial judge's decision to deny Petitioner's motion to recuse. Tenn. Sup. Ct. R. 10B governs appeals from orders denying motions to recuse. Pursuant to § 2.01 of Rule 10B, a party is entitled to an "accelerated interlocutory appeal as of right" from an order denying a motion for disqualification or recusal. The appeal is perfected by filing a "petition for recusal appeal" with the appropriate appellate court. Tenn. Sup. Ct. R. 10B, § 2.02. The only issue we may consider in a Rule 10B appeal is whether the trial judge should have granted Petitioner's motion to recuse. *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012).

Our standard of review in a Rule 10B appeal is de novo.[1] *See* Tenn. Sup. Ct. R. 10B, § 2.01. "De novo" is defined as "anew, afresh, a second time." *Simms Elec., Inc. v. Roberson Assocs., Inc.*, No. 01-A-01-9011CV00407, 1991 WL 44279, at *2 (Tenn. Ct. App. Apr. 3, 1991) (quoting *Black's Law Dictionary* 392 (5th ed. 1979)). In a "de novo" appeal, "the appellate court uses the trial court's record but reviews the evidence and law without deference to the trial court's rulings." *Black's Law Dictionary* (10th ed. 2014). Therefore, we examine the factual record anew, with no presumption of correctness, and reach our own conclusion.[2]

If we determine, after reviewing the petition and supporting documents, that no answer is needed, we may act summarily on the appeal. Tenn. Sup. Ct. R. 10B, § 2.05. Otherwise, this court must order an answer and may also order further briefing by the parties. *Id.* Tenn. Sup. Ct. R. 10B, § 2.06 also grants this court the discretion to decide the appeal without oral argument.

Based upon our review of the petition and supporting documents, we have determined that neither an answer, additional briefing, nor oral argument is necessary, and we elect to act summarily on the appeal in accordance with Tenn. Sup.Ct. R. 10B, §§ 2.05 and 2.06.

## ANALYSIS

In this appeal, Petitioner states, in relevant part:

---

[1] Prior to the adoption of Tennessee Supreme Court Rule 10B, effective July 1, 2012, the appellate courts reviewed recusal decisions pursuant to the more deferential abuse of discretion standard. *See Duke v. Duke*, 398 S.W.3d at 668 n.2 (citing *State v. Hester*, 324 S.W.3d 1, 73 (Tenn. 2010)).

[2] An appeal that is "de novo" is distinguishable from "the de novo standard of review" pursuant to which the "appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise." *See In re Carrington H.*, 483 S.W.3d 507, 524 (Tenn. 2016); *see also* Tenn. R. App. P. 13(d).

On December 21, 2017, the Petitioner, by and through counsel, filed a Motion for Recusal. In his motion, the Petitioner noted that he was an employee at a "local financial institution," where he worked as a "market valuation officer" and that the Judge had an ongoing business relationship with the bank. He alleged he "was directly involved in a decision-making process that ultimately resulted in an effect on the Court's finances." Because of certain banking laws, the Petitioner was not more specific in his motion, and he did not attach an affidavit, intending instead of presenting live testimony at the hearing.

The trial court conducted a hearing on Friday, January 5, 2018. At the hearing, the Petitioner was sworn and called to the stand. The Petitioner testified that he was an employee of Southeast Bank, as a "market valuation officer." He said he dealt "with appraisals, evaluations, determining the value of property and collateral for banking purposes, financing purposes" and noted he had been employed there since August, 2016. At this point in the proceedings, the Court stated "Is the issue in this case that I applied for a home equity line of credit and mortgage at Southeast Bank? A mortgage line that was subsequently granted and a home equity line that was subsequently granted?" . . . The following exchange then occurred:

> Mr. Berg: Yes, your Honor.
>
> THE COURT: What's the basis for a recusal under those circumstances?
>
> Mr. Berg: Well, your Honor, it's my understanding that there was a refinance application and it had to go to a secondary something and it increased the interest rate.
>
> THE COURT: And?
>
> Mr. Berg: And that resulted in the ---
>
> THE COURT: Was that his decision?
>
> THE WITNESS: Yes.
>
> THE COURT: I'm unaware of that. I got the loan approved from Southeast Bank. My home has been refinanced. I don't see a reason for recusal. If that is the only factual circumstances that you're relying on, I'm unaware of Mr. Elseroad's participation in that in any way, shape, or form,

3

until you brought it to my attention. It had no effect whatsoever on this Court. . . . There is no basis for recusal under the facts and circumstances in this case. Motion is denied.

Mr. Berg: Your Honor, respectfully, under Rule 104(a), I would like to get a proffer, because I'm entitled to go to the Court of Appeals on the denial.

THE COURT: You may absolutely have a proffer of evidence after my case is concluded today at the end of my docket, but there is no factual circumstance or any basis for me to recuse myself based upon your Motion having established and your agreeing with me that those are the two facts at issue, that I applied for a loan, that I received a loan, and that I accepted it, and that I have no knowledge whatsoever of Mr. Elseroad's participation in that process at any point until you Motion for Recusal.

Mr. Berg: Yes, your Honor, I understand, with one caveat. It's my understanding, from Mr. Elseroad, that his testimony will be that he was involved in the decision that resulted in an increase in the interest rate.

THE COURT: Yes. I'm not aware of it. I applied for it. I was told, here is the deal, and I accepted the deal. . . . I was unaware of Mr. Elseroad's involvement.

After the Court refused to consider or hear the testimony of the Petitioner on his involvement with the Court's refinance application, a Rule 104(a) proffer of evidence was conducted outside the presence of the Judge, but opposing counsel was present. During the proffer, the Petitioner testified that in layman's terms his job at the bank "deals with evaluating property and collateral for underwriting purposes for a bank, financing."

He testified that in the fall of 2017 (October), the Judge's application for refinance came across his desk and he was asked "to see if we could find justification for a higher [appraisal]." He said the loan application was from "secondary market" which "are loans that we intend to sell, rather than keep in-house."

Regarding the Judge's statement that he was unaware that the Petitioner worked at Southeast Bank, the Petitioner testified that he had "been in the

4

court, in Judge McMillan's courtroom, many times since I've been employed there, and he's ruled on various number of measures and orders and motions since" and that he believed the judge knew he worked at the bank as a result. . . .

The Petitioner testified that he conducted a review of "comparables that could justify a higher valuation" but that he ultimately decided a higher valuation was unwarranted. The Petitioner testified that a bank record exists with his name on it relating to his denial of the request for an increase in the appraisal. He said, "the reason why they wanted - we wanted to scrutinize this deal is because the appraisal came in extremely low underneath the original value of the house in the original appraisal of the house, by a considerable amount, so they wanted another set of eyes on it." The Petitioner testified that because of his decision, a gap was created because of what the Judge owed and the appraised value which thus required "a HELOC that was going to close simultaneous."

He said the purpose of the HELOC was so the Judge could obtain the necessary cash in order to close the refinance. The Petitioner explained that "[t]he HELOC bridged the gap, because his collateral was insufficient for the purposes of refinance, because that would endanger our position as a bank . . . ." The Petitioner testified that to the best of his knowledge, the document containing his signature—which denied the request for an increase in the appraisal and resulted in an increase in the interest rate — was contained in the Judge's "loan package." . . .

As to the effect of his decision, the Petitioner testified that the resulting credit rate was "much higher than your standard mortgage rate" and that the resulting increased amount over the life of the loan constituted a substantial amount. The Petitioner explained his employer instructed him not to testify as to any sum certain because that number "is protected information." The Petitioner said he believed the judge could not be impartial in his case because he knew the Petitioner worked for the bank, noting "he shut down argument without hearing the evidence momentarily ago, and the fact that, if there wasn't a bias against me present, there certainly will be, I believe, if he is able to remain on the case."

Subsequent to the hearing and the offer of proof, the trial court entered an Order, denying the motion. In the Order, the Court states that the motion was not filed with an accompanying affidavit. The undersigned intentionally decided to not file an affidavit, instead choosing to present live testimony, because the subject matter concerned the Judge's personal finances and was potentially embarrassing information. The undersigned

5

also thought the Judge might well take the matter up in Chambers. In any event, the motion was "supported by an affidavit under oath, a declaration under penalty of perjury on personal knowledge or by other appropriate materials." The "other appropriate materials" supporting the motion was the sworn testimony of the Petitioner. Further, the transcript of the hearing, Ex. B, does not reveal the Judge refused to hear the motion on the basis that no affidavit accompanied the same. Indeed, he took live testimony from the Petitioner in the form of three questions and answers before terminating the introduction of evidence and deciding the motion.

(Internal citations to the record omitted).

The petition goes on to state that the trial judge should have recused himself because the decision made by Petitioner had "a direct, negative effect on the Court's personal finances and the effect was substantial," and that the trial judge should have recused himself for two reasons:

the court showed actual bias against the Petitioner by failing to allow him to testify as to the facts supporting his motion and he relied on his own statements of lack of knowledge in ruling on the motion, thus making him a witness, and a judge cannot preside over any matter wherein he is a witness.

The foregoing considered, we have identified the following three issues that require our analysis: (1) Whether the trial judge showed actual bias against Petitioner by failing to allow Petitioner to fully testify as to the facts supporting his motion for recusal; (2) Whether recusal is necessary based on Petitioner's allegations that the trial judge was aware that Petitioner had "a direct, negative effect on the Court's personal finances and the effect was substantial;" and (3) Whether the trial judge is a material witness to this matter.

## I.

Petitioner contends the trial judge showed actual bias against Petitioner "by failing to allow him to testify as to the facts supporting his motion [for recusal]." We disagree.

A motion to recuse should be granted when judges have any doubt about their ability to preside impartially in a case or when "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)); Tenn. Sup. Ct. R. 10, RJC 2.11(A). The relevant portion of the Code of Judicial Conduct provides:

6

(A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

(1) The judge has a personal bias or prejudice concerning a party or party's lawyer, or personal knowledge of facts that are in dispute in the proceedings.

Tenn. Sup. Ct. R. 10, RJC 2.11(A).

The terms "bias" and "prejudice" generally refer to a state of mind or attitude that works to predispose a judge for or against a party; however, "[n]ot every bias, partiality, or prejudice merits recusal." *Alley*, 882 S.W.2d at 821. To merit disqualification of a trial judge, "prejudice must be of a personal character, directed at the litigant, 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" *Id.* (quoting *State ex rel Wesolich v. Goeke*, 794 S.W.2d 692, 697 (Mo. App. 1990)).

However, "[i]f the bias is based upon actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge." *Id.* It is for this reason that "[a] trial judge's adverse rulings are not usually sufficient to establish bias." *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008). "Rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." *Id.* (quoting *Alley*, 882 S.W.2d at 821).

The rationale for this proposition has been explained by our Supreme Court as follows:

[T]he mere fact that a judge has ruled adversely to a party or witness . . . is not grounds for recusal. *See Hines*, 919 S.W.2d at 578. Given the adversarial nature of litigation, trial judges necessarily assess the credibility of those who testify before them, whether in person or by some other means. Thus, the mere fact that a witness takes offense at the court's assessment of the witness cannot serve as a valid basis for a motion to recuse. If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon. *See Kinard*, 986 S.W.2d at 228.

*Davis*, 38 S.W.3d at 565.

7

Based on the foregoing authority, the contention that the trial judge showed bias by refusing to allow Petitioner to testify in support of his motion for recusal is not sufficient, standing alone, to justify recusal. Moreover, Petitioner failed to comply with Rule 10B by not attaching an affidavit that verified the specific factual grounds supporting disqualification of the judge. Therefore, his failure to comply with Rule 10B provides a basis to deny the petition without a hearing on the motion.

As we noted earlier, Tenn. Sup. Ct. R. 10B governs appeals from orders denying motions to recuse. Section 1.01 of Rule 10B clearly and concisely identifies the means by which a motion for recusal is to be presented to the court.

> Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so by a timely filed written motion. **The motion shall be supported by an affidavit under oath or a declaration under penalty of perjury on personal knowledge and by other appropriate materials**. The motion shall state, with specificity, all factual and legal grounds supporting disqualification of the judge and shall affirmatively state that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

*Id.* (Emphasis added).

Petitioner failed to attach an affidavit or declaration to support the factual allegations in the motion. Because Petitioner failed to comply with the rule with a mandatory provision of Rule 10B, the trial judge would have been justified to deny the motion summarily without a hearing, evidentiary or otherwise. Accordingly, the trial judge's decision to limit the extent to which Petitioner could testify in support of his motion is not grounds for recusal. *See Davis*, 38 S.W.3d at 565.

## II.

Petitioner contends recusal is required because the trial judge was aware that Petitioner had "a direct, negative effect on the Court's personal finances and the effect was substantial."

Although Petitioner contends the trial court refused "to allow him to testify as to the facts supporting his motion [for recusal]," the trial judge conducted a hearing on the motion for recusal. During the hearing, Petitioner stated the facts upon which he relied, and counsel for Petitioner was afforded the opportunity to present his argument on the recusal issue. During the hearing, Petitioner's counsel emphasized the facts upon which Petitioner relied. After the trial judge was informed of the specific factual grounds

supporting the motion for recusal, the judge denied having any knowledge of the facts relied on by Petitioner and denied the motion.

We find no error with this decision because Petitioner failed to identify any factual basis to support his suspicion or unfounded belief that the trial judge knew or even suspected that Petitioner had made a decision that adversely affected the trial judge's application for a loan. Moreover, the trial judge stated with clarity that he had no knowledge that Petitioner played any role in the loan application process. The trial judge also stated that he was unaware that there had been an opportunity for a lower interest rate, and he was not aware that Petitioner was involved in a decision that resulted in an increase in the interest rate. As the judge succinctly put it, "I applied for [the loan]. I was told, here is the deal, and I accepted the deal. . . . I was unaware of [Petitioner's] involvement."

Although Petitioner believes the judge knew of his involvement in the loan process, which suspicion is merely based on the fact that the judge knew Petitioner worked for the bank, this belief or suspicion lacks a factual foundation. As the trial judge stated in the order denying the motion for recusal:

> 3. At the hearing, Plaintiff took the stand and disclosed that he worked as a market valuation officer for a local bank. In the course of that employment, Plaintiff indicated that an adverse decision was made that affected the Court's finances.
>
> * * *
>
> 8. The Court was unaware of Plaintiff's employment prior to the Motion for Recusal being filed on December 21, 2017. Prior to Plaintiff's motion, the Court was unaware of any role played by Plaintiff in the bank's internal process.

Based on these and other facts identified in the order denying the motion to recuse, the trial judge reasoned:

> 9. Having engaged in an arm's length transaction with a local financial institution to refinance a debt some three months before its maturity, the Court does not believe that, under the current standard, a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge would find a reasonable basis for questioning the judge's impartiality. *In re Hooker*, 340 S.W.3d 389,395 (Tenn. 2011).

We agree. Petitioner has failed to identify any fact upon which a reasonable person could conclude that the trial judge knew Petitioner had any involvement in the loan process.

Moreover, there is no basis in fact for the trial judge to have a bias against Petitioner because, as the judge explained, "I applied for [the loan]. I was told, here is the deal, and I accepted the deal." Thus, in the judge's perspective, there was no "negative effect" on his finances. Therefore, we have concluded that a reasonable person would come to the same conclusion, based on Petitioner's unsubstantiated suspicions. As Petitioner correctly notes in the petition, even if a judge believes he or she can be fair and impartial, the judge should disqualify himself when "'the judge's impartiality might be reasonably questioned' because 'the appearance of bias is as injurious to the integrity of the judicial system as actual bias.'" *Bean v. Bailey*, 280 S.W.3d 798, 805 (Tenn. 2009) (quoting Tenn. Sup. Ct. R. 10, Canon 3(E)(1)). However, the facts upon which Petitioner relies in this case are simply insufficient to cause the trial judge or reasonable person to question the impartiality of the judge or the integrity of the judicial system.

## III.

Petitioner also contends the trial judge can no longer preside over this case because he made himself a witness. Specifically, Petitioner relies on RJC §2.11 of Tenn. Sup. Ct. R. 10, which states that a judge must disqualify himself where he "was a material witness concerning the matter." The petition goes on to state that the trial judge made himself a witness because "the Judge based his ruling almost exclusively on his own statements that he was unaware of the Petitioner's involvement in his loan application process." We find this contention unpersuasive.

Section 1.03 of Rule 10B requires every judge who denies a motion for recusal to "state in writing the grounds upon which he or she denies the motion." Thus, if a party contends the trial judge has knowledge of facts or circumstances that occurred outside of the courtroom, the judge is under an affirmative duty to state whether he or she does or does not have knowledge of the alleged facts or circumstances that may require recusal. In this case, the trial judge fulfilled his duty by stating that he had no knowledge of the facts or circumstances upon which Petitioner relied in seeking the judge's recusal. In fact, the judge stated from the bench during the hearing on the motion, "I'm unaware of [Petitioner's] participation in that in any way, shape, or form, until you brought it to my attention."

The trial judge denied having any knowledge of the extrajudicial facts of circumstances Petitioner relies on, and this fact, without more, does not make the judge "a material witness concerning the matter," the matter being the divorce proceedings. To the contrary, the trial judge's response has no bearing on the substantive issues in the parties' divorce, only the motion for recusal. Accordingly, the statements made by the judge from the bench and in the order denying the motion to recuse do not require recusal based on RJC §2.11 of Tenn. Sup. Ct. R. 10.

10

We also find it disingenuous for Petitioner to contend that the trial judge must recuse himself based on the judge's response to the motion for recusal. If this were the case, every judge who may be justified in denying a motion to recuse on the basis he or she had no knowledge of extrajudicial facts or circumstances would, nevertheless, have to be recused based on statements the judge made in denying the motion. This contention is neither logical nor the intent of Rule 10B.

For the foregoing reasons, we find Petitioner's argument that the trial judge is a "witness" which compels his recusal to be without merit.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Petitioner, Stuart Elseroad.

_____
FRANK G. CLEMENT JR., P.J., M.S.

11