IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 11, 2025

## RENEGADE MOUNTAIN COMMUNITY CLUB, INC. v. MOY TOY, LLC

**Appeal from the Chancery Court for Cumberland County**
**No. 2024-CH-2576  Ronald Thurman, Chancellor**

_____

**No. E2025-00864-COA-T10B-CV**
_____

This is an accelerated interlocutory appeal from the denial of a motion for recusal of the trial judge. After carefully reviewing the limited record provided by the parties, we affirm the decision of the trial court denying the motion.

**Tenn. S. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and JEFFREY USMAN, JJ., joined.

Matthew J. McClanahan, Crossville, Tennessee, for the appellant, Moy Toy, LLC.

Jack Atkins, Mary Esther, Florida, for the appellee, Renegade Mountain Community Club, Inc.

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

This appeal arises out of a lawsuit filed by Renegade Mountain Community Club, Inc., against Moy Toy, LLC. The record before us does not contain a copy of the complaint, so the precise nature of the lawsuit is not entirely clear from the record. One document filed on appeal describes the lawsuit as one involving unpaid assessments owed pursuant to restrictive covenants encumbering real property owned by Moy Toy. In any event, on April 25, 2025, Moy Toy filed a motion to recuse the trial judge, Chancellor Ronald Thurman. The motion to recuse stated that it was incorporating by reference a motion for recusal and order of recusal from 2019 in a separate case involving the same parties in

which Chancellor Thurman recused himself.

According to the recusal motion in this case, the original case involving these parties was tried in 2015 and 2016, and the central claim in that lawsuit was whether Moy Toy had "developer rights." The motion states that Chancellor Thurman made a "primary" ruling in favor of Moy Toy and concluded that it *did* possess developer rights and that the plaintiffs' claim was barred by the statute of limitations. However, according to the motion, Chancellor Thurman also made an "alternative" ruling, in the event his primary ruling was incorrect, that Moy Toy *did not* have developer rights. According to the recusal motion, that alternative finding was partly based on testimony of expert witness Jack Atkins, whom the court deemed credible. The motion states that Moy Toy objected to the alternative ruling because it had not presented all of its evidence on the developer rights issue in light of the trial court's primary ruling, but Chancellor Thurman nevertheless declined to alter his decision. According to the motion, the case was appealed, and this Court reversed and remanded to the trial court for a determination of the developer rights issue after hearing all of Moy Toy's proof. At that point, Moy Toy (and two other defendants) moved for recusal of Chancellor Thurman on the basis that he had "reached a prejudged conclusion on one or more critical issues in this cause" because the issues he had addressed through his alternative ruling "remain[ed] to be tried" on remand. Specifically, Moy Toy argued that Chancellor Thurman had "made up [his] mind in advance about how [he] wants to rule on the 'developer rights' issue." Moy Toy asserted that "[t]hese issues deserve complete impartiality and open-mindedness on retrial." Yet, Moy Toy expressed its belief that no evidence it offered at that juncture would "make any difference in the Court's findings." Moy Toy claimed that its "earlier efforts to convince the Court otherwise suffices to cause any reasonable person to believe that no such evidence will make any difference to judicial thinking." The 2019 motion to recuse also cited what it described as "external sources" of bias, stating that Chancellor Thurman had presided over "a series of unrelated cases" involving Moy Toy, in which Moy Toy was "subjected to a series of vile characterizations, calumnies and vitriolic name calling, by, among others, one 'Mr. John Moore.'" The motion stated that "one such case" involved a false allegation that Moy Toy was seeking to evict residents of Renegade Mountain in furtherance of a scheme to acquire mineral wealth that lay hidden within the mountain. The motion stated that "during the course of such litigation," Chancellor Thurman had made a comment about "hearing that certain people have been wanting to throw everyone off the mountain and now I'm starting to believe it." The motion stated that "reasonable persons may well have" believed that Chancellor Thurman was referring to Moy Toy and had accepted the ridiculous allegation or gave it sufficient weight that it "now colors all perceptions the Court may now have of [] Moy Toy." Thus, in the earlier case, Moy Toy sought recusal of Chancellor Thurman and the appointment of another trial judge to preside over the proceedings on remand. The record contains an order of recusal signed by Chancellor Thurman on May 30, 2019, granting the motion for recusal without any detailed

explanation of the decision.[1]

Like the incorporated 2019 recusal motion, the 2025 motion for recusal asserted that Chancellor Thurman had "reached a prejudged conclusion" on one or more issues in this case. The 2025 motion stated, "It stands to reason that the conflict has not waned since 2019." The motion also pointed out that Jack Atkins, the expert witness whom the court deemed credible in the previous case, was serving as counsel of record for the plaintiff in this case. It stated, "Permitting this case to be decided by a Chancellor that has previously made a favorable credibility determination regarding one of the attorneys arguing the case, representing one of the parties to this case against the same party in the previous case presents a situation whereby the MOVANT might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor." Finally, the 2025 motion asserted that Chancellor Thuman had recently "heard more proof and more evidence regarding the Plaintiff in this case having recently decided a case between the Plaintiff and Cumberland Pointe Condominium Owners Association, Inc., which is now on appeal before the Court of Appeals." For all these reasons, the 2025 motion asserted that "recusal is mandated as a matter of law."

Plaintiff, Renegade Mountain Community Club, Inc., filed a response in opposition to the motion for recusal. Plaintiff asserted that this action was filed in 2024 and involves unpaid assessments and restrictive covenants encumbering Moy Toy's real property located in Renegade Mountain. Plaintiff noted that Moy Toy's recusal motion made extensive references to other litigation without providing complete case styles, copies of any pleadings, or orders that were referenced. Plaintiff also noted that the recusal motion purported to include direct quotes of witness testimony and a statement by Chancellor Thurman, but no transcripts had been provided. Thus, Plaintiff asserted that Moy Toy's references should be stricken and not considered. Alternatively, however, Plaintiff argued that Moy Toy's arguments were meritless. According to Plaintiff, Moy Toy essentially argued that Chancellor Thurman's "2019 Recusal Order, without more, is cause for recusal in the instant case." Plaintiff acknowledged that it was a party to the previous "Developer Rights" case. According to Plaintiff, the central issue in that case was whether Moy Toy possessed "developer rights" in the planned community known as Renegade Mountain. Plaintiff explained that Chancellor Thurman's "primary ruling" in that case was in favor of Moy Toy, i.e., it did possess developer rights. Plaintiff acknowledged that Chancellor Thurman made an "alternative ruling," anticipating an appeal and attempting to prevent further protracted litigation, finding that Moy Toy did not possess developer rights. According to Plaintiff, the Court of Appeals reversed the primary ruling, and it also reversed the alternative ruling because the trial court had not heard all of Moy Toy's proof.

<hr />

[1] As this Court has previously explained, "Rule 10B specifically states that the judge is required to state in writing his or her grounds for denying a motion to recuse, but only '[i]f the motion is denied.' Nothing in Rule 10B states that the judge shall also state his or her ground for granting a motion to recuse." *Schmeeckle v. Hamilton Cnty.*, No. E2023-01533-COA-T10B-CV, 2023 WL 8093111, at *6 (Tenn. Ct. App. Nov. 20, 2023) (quoting Tenn. Sup. Ct. R. 10B, § 1.03).

- 3 -

As such, the matter was remanded for a determination of the developer rights issue. Plaintiff noted that Moy Toy moved for recusal on remand on the basis that, due to Chancellor Thurman's alternative ruling, he had "pre-judged the developer rights issue and would, therefore, be unable to impartially hear the retrial on the same issue." Chancellor Thurman then granted the motion to recuse without specifying any reason. Plaintiff explained that another judge was assigned to hear the retrial on remand, and he ultimately reached the same conclusion as Chancellor Thurman's alternative ruling, i.e., that Moy Toy did not have developer rights. According to Plaintiff, that decision was affirmed by the Court of Appeals, and the Tennessee Supreme Court denied permission to appeal. Thus, Plaintiff explained that the decision in the "developer rights" case had become final, and Plaintiff noted that the issues in the instant case "are not related" to those in the developer rights case.

To the extent that Moy Toy also argued that Chancellor Thurman presided over other litigation involving negative allegations against Moy Toy, Plaintiff reiterated that Moy Toy had not provided any transcripts or court documents to substantiate its claims. However, Plaintiff suggested that Moy Toy was speculating that Chancellor Thurman's perception of Moy Toy was impacted. Finally, to the extent that Moy Toy complained about the credibility finding made by Chancellor Thurman, Plaintiff noted that the attorney who served as an expert witness in the earlier case would not be testifying in the present case. Plaintiff also argued that adverse rulings, standing alone, do not amount to grounds for recusal. However, Plaintiff noted that Chancellor Thurman's "primary ruling" in the earlier case was actually in favor of Moy Toy. Thus, Plaintiff contended that this fact alone negated Moy Toy's assertion that Chancellor Thurman was biased against Moy Toy to the extent that he could not be impartial. For all these reasons, Plaintiff argued that Moy Toy had failed to carry its burden of showing a legitimate basis for recusal.

After a hearing, Chancellor Thurman entered a written order denying the motion for recusal on May 16, 2025. Chancellor Thurman first noted that Moy Toy sought recusal based on rulings he made dating back to 2016. Chancellor Thurman explained that the previous action involved developer rights, and he found that Moy Toy *did* in fact have developer rights. Thus, Chancellor Thurman explained, "Moy Toy prevailed in the underlying case." Chancellor Thurman recognized Moy Toy's contention that he should have let it present additional evidence, but he explained that the Court of Appeals reversed his ruling, the matter was retried before a different trial judge who found that Moy Toy did *not* have developer rights, and that ruling was upheld after a second appeal. Chancellor Thurman conceded that he had recused himself after trying the initial case in which Moy Toy prevailed, but he explained that he granted Moy Toy's recusal motion "after the case was reversed on appeal to allow a new judge to hear the facts in the case." Thus, Chancellor Thurman found that the arguments made by Moy Toy in this recusal motion lacked merit and were unfounded.

As for the credibility finding regarding Jack Atkins, Chancellor Thurman explained

- 4 -

that Mr. Atkins was a witness in the 2016 trial, and he had found him to be a credible witness. Chancellor Thurman noted that Moy Toy was essentially complaining about the fact that the trial judge had made a statement regarding the credibility of the witness during the 2016 trial. However, Chancellor Thurman explained that it is part of a trial court's role in preparing a record to make a finding as to the credibility of witnesses. Furthermore, Chancellor Thurman noted that he expected all attorneys of record to be "credible" and honest in their dealings with the court. He noted that Mr. Atkins would not be a witness in the present action. Thus, Chancellor Thurman found no basis for recusal. Moy Toy timely filed a petition for recusal appeal.

## II. DISCUSSION

Judicial recusal is governed by Tennessee Supreme Court Rule 10B. This Court reviews a trial court's decision on a motion for recusal under a *de novo* standard of review. Tenn. Sup. Ct. R. 10B § 2.01. The only issue we may consider in a Rule 10B appeal is whether the trial judge should have granted the motion for recusal. *Elseroad v. Cook*, 553 S.W.3d 460, 462 (Tenn. Ct. App. 2018); *Boren v. Hill Boren, PC*, 557 S.W.3d 542, 546 (Tenn. Ct. App. 2017). We do not review the merits or correctness of the trial court's other rulings. *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012).

In the argument section of Moy Toy's petition for recusal appeal, it argues that Chancellor Thurman erred by failing to recuse himself for the following reasons:

> [Moy Toy] previously filed a Motion and Order between the parties in this case (Case No. 2012-CH-527; Case No. 2011-CH-508). A copy of said Order and Motion are in the record of this case. Chancellor Thurman previously found that there was a conflict and signed an Order of Recusal on May 30, 2019 from the rehearing of the case between the parties. During the initial trial overseen by Chancellor Thurman, Jack Atkins (the attorney of record for the Plaintiff in this case) served as an expert witness for the Plaintiff and Chancellor Thurman found him to be credible. Permitting this case to be decided by a Chancellor that has previously made a favorable credibility determination regarding one of the attorneys arguing the case, representing one of the parties to this case against the same party in the previous case presents a situation whereby a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality and might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor.
>
> Furthermore, a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality as Chancellor Thurman having previously recused himself in a case between these same parties.

Thus, Moy Toy argues on appeal that recusal was mandated for two reasons – the chancellor's prior recusal in a case involving the same parties, and the chancellor's previous credibility finding regarding the expert witness in the first case who now serves as Plaintiff's counsel.

We first address Moy Toy's assertion that recusal was necessary because Chancellor Thurman found that Jack Atkins was a credible witness in the 2016 trial, and he now serves as Plaintiff's counsel in this case. Moy Toy argues that "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality and might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor." We disagree. A recent opinion by the Tennessee Supreme Court is instructive on the issue of recusal and previous expert testimony.

In *Adams v. Dunavant*, 674 S.W.3d 871, 873 (Tenn. 2023), the probate judge, before his election to the bench, had served as an expert witness in a 2017 case involving one of the defendant law firms. In that earlier case, the probate judge, who was a private attorney at the time, reviewed a fee application submitted by the defendant law firm and opined in an expert affidavit that it was "outrageous and clearly excessive." *Id.* at 874. He opined that the law firm's hourly rate was excessive, it billed an excessive amount of hours for a relatively simple case, and its redacted fee application was "unintelligible." *Id.* at 875. Thus, in the case pending before the now-probate judge in 2022, the law firm moved for recusal, asserting that the judge's previous expert opinion created an actual and apparent bias against the law firm. *Id.* at 874-75. The judge denied the motion for recusal. *Id.* at 875. On appeal to the Supreme Court, it provided a detailed explanation of the standards governing recusal motions, and particularly those relating to prior expert testimony, which we quote at length:

> "Tennessee litigants are entitled to have cases resolved by fair and impartial judges." *Cook v. State*, 606 S.W.3d 247, 253 (Tenn. 2020) (citing *Davis* [*v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001)]; *see also State v. Griffin*, 610 S.W.3d 752, 757-58 (Tenn. 2020). To preserve public confidence in judicial neutrality, judges must be fair and impartial, both in fact and in perception. *Cook*, 606 S.W.3d at 253; *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). To these ends, the Tennessee Rules of Judicial Conduct ("RJC") declare that judges must "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Tenn. Sup. Ct. R. 10, RJC 1.2. Another provision declares that judges "shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially." *Id.*, RJC 2.2.
> To act "impartially" is to act in "absence of bias or prejudice in favor

of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." *Id.*, Terminology. "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." *Id.*, RJC 2.11(A).

Rule of Judicial Conduct 2.11 "incorporates the objective standard Tennessee judges have long used to evaluate recusal motions." *Cook*, 606 S.W.3d at 255. "Under this objective test, recusal is required if 'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Id.* (quoting *Davis*, 38 S.W.3d at 564-65).

The intermediate appellate courts have explained that the proponent of a recusal motion bears the burden of establishing that recusal is appropriate and that any alleged acts of bias or prejudice arise from extrajudicial sources rather than from events or observations during the litigation of the case. *Tarver v. Tarver*, No. W2022-00343-COA-T10B-CV, 2022 WL 1115016, at *2 (Tenn. Ct. App. Apr. 14, 2022). A trial judge has a duty to serve unless the proponent establishes a factual basis warranting recusal. *Raccoon Mtn. Caverns and Campground, LLC v. Nelson*, No. E2022-00989-COA-T10B-CV, 2022 WL 3100606, at *3 (Tenn. Ct. App. Aug. 4, 2022) (quoting *Rose v. Cookeville Reg'l Med. Ctr.*, No. M2007-02368-COA-R3-CV, 2008 WL 2078056, at *2 (Tenn. Ct. App. May 14, 2008)).

Furthermore, rulings adverse to the proponent of a recusal motion are not, standing alone, grounds for recusal. [*State v.*] *Cannon*, 254 S.W.3d [287, 308 (Tenn. 2008)]; *Davis*, 38 S.W.3d at 564; *Duke v. Duke*, 398 S.W.3d 665, 671 (Tenn. Ct. App. 2012). "Rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). "[T]he mere fact that a judge has ruled adversely to a party or witness in a prior judicial proceeding is not grounds for recusal." *Davis*, 38 S.W.3d at 565 (citing *State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995)). The "adversarial nature of litigation" makes it necessary for trial judges to "assess the credibility of those who testify before them, whether in person or by some other means," and "the mere fact that a witness takes offense at the court's assessment of the witness cannot serve as a valid basis for a motion to recuse." *Id.* "If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartial[it]y issue for strategic advantage, which the courts frown upon." *Id.*

Applying these standards de novo to the facts of this case, we cannot conclude that a person of ordinary prudence in the probate judge's position, knowing all the facts known to him, would find a reasonable basis for

questioning his impartiality. The opinions he expressed in the 2017 affidavit concerned a different case and distinct legal questions, specifically whether the fees requested in that unrelated case were reasonable and whether the fee application was sufficiently detailed and specific to enable the trial judge in that case to determine if the work for which fees were claimed related to the matter for which fees had been awarded. This matter involves neither the reasonableness of fees nor the sufficiency of any fee application. Even assuming that expressing an opinion on a matter as an expert witness could constitute grounds for recusal in some situations, the 2017 affidavit does not indicate bias because it is not sufficiently related to the issues in this case.

. . .

*Davis v. Liberty Mutual Insurance Company* is instructive. In *Davis*, the trial judge previously resolved a workers' compensation case and expressed negative opinions about the credibility of an expert witness. *Id.* at 563-64. The employee in *Davis* moved for the trial judge's recusal because the employee planned to call the same expert witness to testify. *Id.* at 562-64. The employee alleged that the trial judge's negative assessment of the expert witness's credibility in the earlier case amounted to bias against the expert requiring the trial judge's recusal. *Id.* at 564-65. The trial court disagreed and denied the recusal motion. *Id.* at 565. The employee appealed, and this Court affirmed. *Id.*

The *Davis* Court declared: "the mere fact that a judge has ruled adversely to a party or witness in a prior judicial proceeding is not grounds for recusal." *Id.* The *Davis* Court opined that the trial court's statements in the prior case concerning the expert witness's credibility were not "an objectively reasonable basis for questioning the judge's impartiality" in a subsequent case. *Id.*

Although *Davis* involved a previous ruling made by a trial judge, rather than statements made by an expert witness, we reach the same conclusion here. The opinions the probate judge expressed in the 2017 affidavit about the fee application at issue in the 2017 case are not an objectively reasonable basis for questioning the probate judge's impartiality. The probate judge's 2017 opinions related specifically to the fee application and legal issues in that separate case. His opinions were not inherently hostile to or biased against [the law firm] but were his assessment of the particular fee application in that case.

*Id.* at 878-80. Thus, the Tennessee Supreme Court held that the probate judge's denial of the recusal motion was appropriate. *Id.* at 873.

Applying these principles to the case at bar, we readily conclude, as in *Davis*, that "the trial court's statements in the prior case concerning the expert witness's credibility were not 'an objectively reasonable basis for questioning the judge's impartiality' in a

subsequent case." *See id.* at 880 (quoting *Davis*, 38 S.W.3d at 565). Notably, Moy Toy only asserts that Chancellor Thurman found Mr. Atkins "credible" when he served as an expert witness in a prior case involving these same parties. This does not mandate recusal, as Moy Toy suggests. *See In re Bell*, 344 S.W.3d 304, 316 (Tenn. 2011) ("A judge is in no way disqualified because he tried and made certain findings in previous litigation, . . . and the mere fact that a judge has ruled adversely to a party or witness in prior judicial proceedings is not grounds for recusal.") (quotations omitted). "The 'adversarial nature of litigation' makes it necessary for trial judges to 'assess the credibility of those who testify before them.'" *Adams*, 674 S.W.3d at 879 (quoting *Davis*, 38 S.W.3d at 565).

Next, Moy Toy argues that recusal was necessary because Chancellor Thurman "signed an Order of Recusal on May 30, 2019 from the rehearing of the case between the parties." Thus, Moy Toy argues that "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality as Chancellor Thurman having previously recused himself in a case between these same parties." However, we disagree with Moy Toy's suggestion that a previous recusal necessarily mandates a second. *See In re Conservatorship of Osborn*, No. M2020-01447-COA-R3-CV, 2021 WL 5144547, at *9 n.9 (Tenn. Ct. App. Nov. 5, 2021) (noting "Appellants' reliance on nothing more than assumptions and innuendo that the conflict that required recusal in the separate case was also present in this case"); *Montooth v. State*, No. 01C01-9604-CC-00126, 1997 WL 381907, at *1-2 (Tenn. Crim. App. July 11, 1997) *perm. app. denied* (Tenn. Apr. 13, 1998) (declining to assume that a trial judge who recused himself from participating in a wrongful death civil action against the petitioner "should also recuse himself in this post-conviction matter" because "[a]ny number of reasons may have existed for the recusal in the civil case," the petitioner had the burden of persuasion, and "[t]his court may not assume, absent supporting cause, that the trial judge should have been disqualified from the proceeding").

After remand in the previous case, Moy Toy moved for recusal stating that the Court of Appeals had remanded for consideration of the same issues Chancellor Thurman had addressed in his alternative ruling, he had not allowed Moy Toy to present all of its evidence at the original trial, and Moy Toy alleged that Chancellor Thurman had already "made up [his] mind in advance about how [he] wants to rule on the 'developer rights' issue." Moy Toy argued that these issues "deserve[d] complete impartiality and open-mindedness on retrial," and it believed that no amount of evidence it offered on remand would change Chancellor Thurman's mind. That is precisely why Chancellor Thurman recused himself in 2019, according to the order he entered in this case. The order states that he recused himself "after the case was reversed on appeal to allow a new judge to hear the facts in the case" on remand. Chancellor Thurman similarly explained, at the hearing on the recusal motion, that "the reason I recused myself from retrying the case is I wanted to give -- get a new, fresh set of eyes on the case" and "wanted somebody with – that hadn't had any involvement in it here." Thus, Chancellor Thurman found that his specific reasoning for recusal in the earlier case did not provide any reason for recusal in the case

at bar. He also reiterated that his primary ruling at the original trial in the earlier case was in Moy Toy's favor. Thus, Chancellor Thurman explained that the previous case did not provide a basis for recusal here, "especially in light of [the fact] I ruled in their favor on it." We agree with Chancellor Thurman's conclusion. His primary ruling in the earlier case was in favor of Moy Toy, undermining any claim of bias, and Moy Toy has not demonstrated that the issues involved in this separate case have any relation to the remanded issues in the previous case. Simply put, Moy Toy's petition relies on the fact that Chancellor Thurman "previously recused himself in a case between these same parties" without examining the reason for Chancellor Thurman's prior recusal and whether those concerns are present in this case. *See State v. Davis*, No. 03C01-9712-CR-00543, 1999 WL 135054, at *2-3 (Tenn. Crim. App. Mar. 15, 1999) *perm. app. denied* (Tenn. Oct. 11, 1999) (rejecting the appellant's argument that the trial judge erred by "presiding at trial after initially recusing himself" from the case when "the reason for recusal no longer existed" by the time of trial); *see also Camp v. Camp*, 361 S.W.3d 539, 548-49 (Tenn. Ct. App. 2011) (recognizing that one of the trial judge's stated reasons for a prior recusal "no longer exist[ed]" but finding that the second stated reason did still exist, and therefore the trial judge erred in denying the subsequent motion to disqualify). We conclude that a person of ordinary prudence in the judge's position, knowing all the facts known to the judge, would not find a reasonable basis for questioning the judge's impartiality in this case. *See Cook*, 606 S.W.3d at 255.

Finally, we note that Moy Toy raises an issue regarding whether Chancellor Thurman's order denying the recusal motion was "sufficiently drafted." Moy Toy only relies on Tennessee Rule of Civil Procedure 52.01. However, Rule 52.01 states, "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rules 41.02 and 65.04(6)." Tenn. R. Civ. P. 52.01. In *Bean v. Bailey*, 280 S.W.3d 798, 805 n.6 (Tenn. 2009), the Tennessee Supreme Court noted that Rule 52.01 did not require a trial court "to make findings of fact on motions for recusal." *See also Webber v. Bolling*, No. C.A. 177, 1989 WL 151496, at *4 (Tenn. Ct. App. Dec. 13, 1989). Although it was not cited by Moy Toy, we acknowledge that "Section 1.03 of Rule 10B requires every judge who denies a motion for recusal to 'state in writing the grounds upon which he or she denies the motion.'" *Elseroad*, 553 S.W.3d at 468 (quoting Tenn. Sup. Ct. R. 10B § 1.03). However, we conclude that Chancellor Thurman fulfilled his duty under Section 1.03.

## III. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed and remanded. Costs of this appeal are taxed to the appellant, Moy Toy, LLC, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE