IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 26, 2018

## C. D. B. v. A.B.

**Appeal from the Circuit Court for Davidson County**
**No. 13D-2846          Philip E. Smith, Judge**

_____

**No. M2018-00532-COA-T10B-CV**
_____

Mother appeals from the denial of her motion to recuse the trial court after the trial court, *sua sponte*, ordered Mother to undergo a mental examination pursuant to Rule 35.01 of the Tennessee Rules of Civil Procedure. Because the trial court's actions in this case do not create the appearance of bias, we affirm.

**Tenn. Sup. Ct. R. 10B Accelerated Interlocutory Appeal; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Cynthia A. Cheatham, Nashville, Tennessee, for the appellant, C.D.B.[1]

A.B., Longmont, Colorado, Pro Se.

## OPINION

### Background

This is an appeal from the trial court's decision to deny a recusal motion. The parties, Petitioner/Appellant C.D.B. ("Mother") and Respondent/Appellee A.B. ("Father") were engaged in post-divorce child custody proceedings in the Davidson County Chancery Court at the time the recusal issue arose.[2] Although the parties' marriage spanned only eight months, the parties have been engaged in post-divorce

_____

[1] Because this case involves allegations of sexual abuse, we follow this Court's policy of removing the names of minor children and other parties in order to protect their identities.

[2] In this recusal appeal, our record consists of only the documents submitted by the parties. As such, we take some of the procedural facts of this case from the trial court's order denying recusal. Neither party raised any objection in the appeal to the procedural facts as set out therein and included in this Opinion.

custody litigation concerning their one child for the better part of four years. In 2015, Father filed a petition to modify the parties' parenting plan, seeking an increase in the very limited supervised visitation that had previously been awarded in the parties' Colorado divorce. Mother opposed the change, alleging in a 2015 pre-trial brief that the child had made several statements causing Mother to become suspicious of sexual abuse by Father as early as 2012; Mother alleged that an investigation into the abuse allegations was ongoing with the Tennessee Department of Children's Services ("DCS").[3] Mother also alleged that Father had once engaged in domestic violence against Mother, resulting in criminal charges and a protective order; Mother admitted that the protective order, however, had expired.

In his pretrial brief, Father denied the allegations of sexual abuse and alleged that Mother had made multiple allegations of sexual abuse against him since the child's birth, including eight referrals by Mother or someone on her behalf to DCS.[4] Father asserted, however, that every investigation was closed without evidence of sexual abuse. Based upon these allegedly unfounded allegations and investigations, Father contended that Mother knowingly making false allegations of sexual abuse was an attempt by Mother to interfere with his relationship with the child. In support, Father attached to his pre-trial brief a March 2015 interrogatory response submitted by Mother, in which she detailed seventeen interactions with law enforcement, child services, counseling, or nursing individuals concerning the allegations against Father regarding alleged abuse of both herself and the child.[5] Despite the serious allegations raised by Mother, she eventually agreed to significantly increase Father's parenting time, from just sixteen days per year with no overnight visits to ninety-six days per year with overnight visitation. An agreed order was entered to that effect in October 2015.

In June 2016, Father had filed a second petition to modify the parenting plan, this time seeking to be designated the child's primary residential parent and to be awarded sole decision-making authority over the child. Contemporaneous with his modification request, Father also filed a criminal contempt petition against Mother due to her failure to abide by the parties' parenting plan. Father likewise asserted that a change in custody was warranted due to Mother's failure to comply with the parenting plan and the fact that she "regularly falsely" accused Father of sexual abuse of the child. Mother responded in

---

[3] Despite these allegations, Mother's proposed findings regarding the child's best interest under Tennessee Code Annotated section 36-6-106(a) made no mention of sexual abuse of the child as a relevant consideration. Specifically, although section 36-6-106(a)(11) requires the court take into account abuse to both the child and adults living in the home, Mother's discussion of this factor in her pre-trial brief mentions only the abuse perpetrated on Mother. Likewise, Mother specifically stated that Father's mental, moral, and emotional fitness was not at issue. *See* Tenn. Code Ann. § 36-6-106(a)(8).

[4] Father notes that he was only specifically alleged to be the perpetrator in six of the referrals.

[5] This interrogatory response appears to have been attached to both Mother's pretrial brief and Father's pretrial brief, according to the exhibits attached to Father's petition. Although Mother filed a motion to strike certain exhibits, the pre-trial brief and their exhibits were not included in the list of exhibits that Mother asked be stricken from the record.

opposition to Father's petition and filed a counter-petition seeking a slight decrease in Father's visitation.[6] The contempt petition was eventually dismissed by agreement of the parties.

At some point, the trial court ordered that it would only consider circumstances existing following the entry of the 2015 parenting plan. The parties thereafter engaged in discovery based upon an agreed scheduling order; when Mother purportedly failed to timely disclose several experts regarding the sexual assault allegations, the trial court entered an order excluding the experts. In December 2017, Mother filed a motion for recusal of the trial judge, arguing that the exclusion of the experts was the result of bias. Relevant to this appeal, Mother alleged in her recusal motion that based upon allegations of abuse of the child, the child's counselor from the Sexual Assault Center "made multiple reports to [DCS]" about abuse allegedly perpetrated by Father. The motion noted further contact between the child and a mental health professional for a forensic evaluation related to the alleged sexual abuse of the child. Mother also alleged that Father had previously accused her of "poisoning [the child's] brain" with the sexual assault allegations. The recusal motion was eventually denied by the trial court and no interlocutory appeal resulted.

A hearing on the parties' competing petitions regarding custody was set for January 30 and 31, 2018. The day of the scheduled hearing the trial court took the bench to announce that trial would not take place because the trial court, having read the parties' pre-trial submissions, *sua sponte*, lodged a motion for Mother to be examined under Rule 35 of the Tennessee Rules of Civil Procedure, discussed in detail, *infra*. In its oral ruling, the trial court stated the basis for its decision to move for a Rule 35 examination as

> the numerous, numerous DCS filings that she has either made or someone made on her behalf has made. And I believe that there could possibly be parental alienation in this case. . . . I am thinking that will be necessary for me to address the best interest of the child.

The trial court therefore directed the parties to appear the next day, January 31, 2018 to determine whether a Rule 35 examination should be ordered. The trial court noted, however, that if Mother was willing to waive the hearing and "allow[] [the trial court] to rule today," the trial court would order the Rule 35 examination and stay the final hearing pending its completion. It appears that Mother did not agree to waive the hearing and allow the trial court to rule that day; as such, the parties were ordered to return to court the following morning. Later, the trial court entered a written order memorializing his oral ruling, captioned "Order Regarding Notice to Parties of Court's Oral Motion, *Sua Sponte*, for [Mother] to Submit to a Psychological Examination Pursuant to Rule 35[.]" Therein, the trial court reiterated that the basis of the ruling was "review of the Pre-Trial

---

[6] Specifically, Mother sought a decrease of eleven days per year, resulting in visitation to Father of eighty-five days per year.

Briefs submitted by counsel for the parties . . . , as well as review of the entire record including pleadings in this matter." Based on these submissions, the trial court stated that it

> has concerns regarding the numerous investigations of [DCS] regarding allegations of child abuse made by [Mother], or someone on her behalf. As a result, the Court does not believe it can make a ruling regarding the best interest of the parties' minor child absent a Rule 35 psychological examination of [Mother].

Father and his counsel appeared as scheduled at the hearing. Mother and her counsel did not appear. According to Mother, the failure to appear was the result of her counsel's diligent efforts to file a written response to the trial court's *sua sponte* motion. A sixteen page response to the Rule 35 motion was faxed to the trial court on January 31, 2018, after the conclusion of the hearing. Therein, Mother argued that a Rule 35 examination was not warranted, that the Rule 35 criteria had not been met, that parental alienation was largely "junk science," and that the trial court had no evidence of parental alienation, as the allegations in Father's pre-trial brief did not constitute proof. Mother also asserted that pursuant to the trial court's order limiting the proof to only those events that took place after the entry of the 2015 parenting plan, "there have been two (2) reports to DCS since that parenting plan was entered, neither made by [Mother] nor anyone on 'her behalf.'" As such, Mother requested the opportunity to place the trial court under oath and question the basis for the trial court's motion for a Rule 35 examination.

At the hearing, the trial court noted Mother's absence, but no evidence was adduced.[7] Rather, the trial court ruled that Mother would be required to undergo a mental examination at Mother's expense. The trial court named the specific doctor to whom Mother was to see and ordered that Mother obtain the examination within forty-five days. Mother filed a motion to reconsider the trial court's ruling on February 2, 2018. Therein, Mother again argued that the trial court had no evidence from which to conclude that good cause existed to order a Rule 35 examination.

At some point, Father filed a response in support of the trial court's motion for a Rule 35 examination. Therein, Father argued that a Rule 35 examination was warranted under the circumstances. Specifically, Father alleged that good cause existed for the examination because Mother, on her own or by another individual on Mother's behalf, had caused eight investigations to be conducted by DCS regarding child abuse of the parties' child. According to Father, Mother's mental health was in controversy due to Father's allegation that Mother's behavior has caused the child psychological harm. Father attached to his response a DCS document indicating that eight investigations had been initiated by DCS regarding allegations of abuse against the parties' child, as well as a December 2017 document indicating that a DCS investigation of sexual abuse

---

[7] The trial court had previously ruled that the parties could submit evidence by affidavit only.

allegations regarding the child had been closed due to lack of sufficient evidence to substantiate the allegations.[8]

The trial court eventually entered its written order directing Mother to undergo a mental examination on February 21, 2018. Therein, the trial court ruled that a mental examination was necessary due to "the numerous referrals that Mother has allegedly made to [DCS]." The trial court also ordered that Mother was prohibited from taking the child to the Sexual Assault Center pending further orders of the court.

In the meantime, Mother filed a second motion to recuse the trial judge on the basis of the trial court's ruling on the Rule 35 issue "before any hearing had commenced and before either party had even begun its proof." Mother asserted that in making the *sua sponte* Rule 35 "motion," the trial court was essentially acting as an advocate for Father. Specifically, Mother argued in her motion that:

> 15. [The] Court's motion, without further evidence, is concerning because (1) the trial Court appears to be advocating [Father's] position; (2) the facts upon which the Court made its motion are disputed and it is unclear where the Court obtained the information and (3) [Mother] was required without notice to pay for the evaluation; and (4) [Mother] was restrained from taking [the child] to the Sexual Assault Center without a pleading filed, nor allegation of "immediate and irreparable harm" and without notice that anyone, including the Court, was alleging that a restraining order was necessary.

> 16. Therefore, [Mother] respectfully submits that this Court's actions, in acting as an advocate for [Father], making a motion while stating that Ms. Diaz's mental health is of concern to the Court, before any witnesses testified and without any evidence whatsoever, requires the Court's recusal, because a "reasonable person" in the place of Ms. Diaz, would believe this judge's impartiality might reasonably be questioned. Furthermore, Ms. Diaz believes the Court made findings of fact based on no proof whatsoever that she made "numerous" reports to DCS, those reports were unwarranted and that those reports call into question her mental health.

Mother's motion was accompanied by an affidavit in which Mother detailed the trial court's *sua sponte* Rule 35 motion, the fact that Mother had been ordered to respond to the motion the following day, and the trial court's ultimate ruling on the Rule 35 issue. Finally, Mother alleged:

> I believe the judge has predetermined the outcome of my case. Further, I believe the judge will not listen to anything my witnesses say that is

---

[8] Again, Mother's motion to strike documents submitted by Father did not seek to strike this pleading filed by Father, which attached the DCS documents as exhibits.

contrary to his beliefs, which is that I have made lots of reports to DCS, or had someone make DCS reports, and that I am "alienating" my son from his father, the Petitioner in this case. Since no evidence was entered on this issue I was shocked, then concerned about the judge's allegations against me.

On March 15, 2018, the trial court entered a lengthy order denying Mother's recusal motion. The trial court noted that the sexual abuse allegations had been detailed in both Mother's and Father's pre-trial briefs. The trial court also stated that it harbored no "ill-will, prejudice, or pre-conceived thoughts or feeling towards either party," but recognized that recusals must also be judged by an objective standard. Nevertheless, the trial court found that its behavior did not create the appearance of bias because Mother's mental health was squarely at issue in the case where it impacted the best interest of a child. The trial court noted that Mother had previously filed a pre-trial brief making numerous allegations of inappropriate behavior against Father toward the child, only to agree to increased unsupervised visitation shortly thereafter. The trial court ruled that it could consider all of "the claims and defenses" in determining whether Mother should be subjected to a Rule 35 examination. According to the trial court, these pleadings, including Mother's own pleadings, led the trial court to believe that more information was necessary to determine the custody issues in the case. Rather than having prejudged the issue of parental alienation, the trial court explained:

> [The court] has not ["accused [Mother] of alienating her son from his father"]. Based on the record, the parties' pleadings, and the facts and information brought before the Court, the Court has sought to determine whether parental alienation might be an issue. The Court has not made any such determination in this matter, but has exercised its discretion to gather the information necessary to do so. This does not indicate the Court's bias or prejudice towards [Mother]. Instead, this indicates the Court's acceptance of its primary responsibility—to ensure that its rulings are in [the child's] best interests.

(Footnote omitted). The trial court further noted that should Mother disagree with his order directing her to undergo a Rule 35 examination, Mother was free to seek an interlocutory appeal of that order pursuant to the rules of this Court. The trial court therefore denied Mother's motion.

On March 23, 2018, Mother filed a timely petition to this Court seeking a recusal appeal pursuant to Rule 10B of the Tennessee Rules of the Supreme Court, as well as a stay of the proceedings in the trial court pending appeal. On March 29, 2018, this Court entered an order staying all proceedings in the trial court and directed Father to file a response. Father, acting pro se, filed a response on April 10, 2018.[9] We now exercise our

---

[9] On April 13, 2018, Mother filed a motion to strike several of the exhibits attached to Father's

discretion to decide this appeal without oral argument. *See* Tenn. R. Sup. Ct. 10B, § 2.06 ("The appellate court's decision, in the court's discretion, may be made without oral argument.").

## Issue Presented

This appeal involves a single issue: whether the trial court erred in denying Mother's motion to recuse filed following the trial court's order directing Mother to undergo a Rule 35 examination. Recusal should be granted "whenever the judge has any doubts about his or her ability to preside impartially" or "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994) (footnote omitted). The trial judge in this case expressly ruled that it had no doubt about its ability to rule impartially. As such, the dispositive issue is whether a reasonable person would question the judge's impartiality under the circumstances of this case. We review the trial judge's denial of a motion to recuse "under a de novo standard of review." Tenn. Sup. Ct. R. 10B, § 2.01.

## Analysis

Tennessee Code of Judicial Conduct Rule 2.11 provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" Tenn. R. Sup. Ct. 10, § 2.11. It is well-settled that "'[t]he right to a fair trial before an impartial tribunal is a fundamental constitutional right.'" *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)). Article VI, Section 11 of the Tennessee Constitution, Tennessee Code Annotated section 17-2-101, and the Code of Judicial Conduct prohibit a judge from presiding over a matter in which the judge has an interest in the outcome or where the judge is connected to either party. The purpose of the prohibition is to "guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court [] reached a prejudged conclusion because of interest, partiality, or favor." *Austin*, 87 S.W.3d at 470 (citation omitted). Additionally, we have emphasized that "the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (citations omitted). Accordingly, even in cases wherein a judge sincerely believes that she can preside over a matter fairly and impartially, the judge nevertheless should recuse herself in cases where a reasonable person "'in the judge's position, knowing all the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564–65 (Tenn. 2001) (quoting *Alley*, 882 S.W.2d at 820). It is an objective test designed to avoid actual bias

---

response as having never been filed with the trial court. Mother's motion was granted by separate order of April, 23, 2018. We therefore consider only the documents properly included with this appeal.

and the appearance of bias, "since the appearance of bias is as injurious to the integrity of the judicial system as actual bias." **Davis**, 38 S.W.3d at 565 (citation omitted).

Here, Mother essentially argues that the trial judge's *sua sponte* motion for a Rule 35 exam illustrates that the trial judge pre-judged her case based on the parties' pleadings, which Mother contends constitute an extrajudicial source.

Under Rule 2.3 of the Tennessee Code of Judicial Conduct, "[a] judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice." Tenn. R. Sup. Ct. 10, § 2.3(a). As such,

> A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
>
> (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding. . . .

Tenn. R. Sup. Ct. 10, § 2.11(A)(1).

Generally, the terms "bias" and "prejudice" refer to a state of mind or attitude that works to predispose a judge for or against a party. **Alley**, 882 S.W.2d at 821. "'However, not all unfavorable dispositions toward an individual or case can be properly described by those terms. The words suggest a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate because it is excessive, undeserved, or rests on knowledge the subject should not possess.'" **Cain-Swope v. Swope**, 523 S.W.3d 79, 89 (Tenn. Ct. App. 2016), *perm. app. denied* (Apr. 12, 2017) (quoting **Groves v. Ernst-W. Corp.**, No. M2016-01529-COA-T10B-CV, 2016 WL 5181687, at *5 (Tenn. Ct. App. Sept. 16, 2016)). Bias is often divided into two types, each of which implicates a different standard for determining whether recusal is warranted. Where a bias stems from an extrajudicial source, rather than from events or observations during litigation of a case, it may be sufficient to justify recusal if the judge's behavior raises "reasonable questions about the judge's impartiality." **Groves**, 2016 WL 5181687, at *5; *see also* **McKenzie v. McKenzie**, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *3 (Tenn. Ct. App. Feb. 11, 2014) (quoting **Alley**, 882 S.W.2d at 821) ("To disqualify, prejudice must be of a personal character, directed at the litigant, 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case.'") Where, however, "the bias is alleged to stem from events occurring in the course of the litigation of the case, the party seeking recusal has a greater burden to show bias that would require recusal, *i.e.*, that the bias is so pervasive that it is sufficient to deny the litigant a fair trial." **McKenzie**, 2014 WL 575908, at *3.

Mother asserts that the bias in this case stems from an extrajudicial source: Father's pre-trial brief and other pleadings. Respectfully, we cannot agree. As an initial

matter, Mother cites no caselaw in which pleadings were held to constitute extrajudicial sources for purposes of determining bias. Our research has likewise revealed no caselaw in which a trial court was found to have considered an extrajudicial source for purposes of recusal merely by reviewing and relying on the filings of the parties to the very case at issue. The term extrajudicial is defined as "[o]utside court" or "out-of-court." *Black's Law Dictionary* 665 (9th ed. 2009). While we agree that Father's allegations in his pre-trial brief are not evidence, *see **Washington v. Tennessee Dept. of Corr.***, No. 01A-01-9603-CH-00131, 1996 WL 334359, at *1 (Tenn. Ct. App. June 19, 1996) ("Unsworn allegations of fact in pleading or brief do not create an issue as to facts shown by sworn evidence."), neither are Father's allegations extrajudicial statements as they were filed with the court. Indeed, this argument borders on the absurd where trial courts are often called upon to evaluate pleadings prior to the submission of any evidence. "Forming an opinion of litigants and issues based on what is learned in the course of judicial proceedings is necessary to a judge's role in the judicial system." ***Groves***, 2016 WL 5181687, at *5 (footnote omitted) (citing ***Liteky v. U.S.***, 510 U.S. 540, 550–51 (1994)). To hold that a trial court's evaluation of the pleadings constitutes consideration of extrajudicial sources that subjects the trial court to the more stringent standard for recusal would be untenable.

Because the alleged bias in this case does not stem from extrajudicial sources, we next consider whether the trial court's alleged bias was so pervasive as to deny Mother a fair trial. *See **McKenzie***, 2014 WL 575908, at *3. In arguing that there was a pervasive bias in this case, Mother spends considerable effort in her petition to this Court arguing that the trial court was without sufficient proof to order the Rule 35 examination. Under Rule 35.01 of the Tennessee Rules of Civil Procedure:

> When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

Tenn. R. Civ. P. 35.01. Additionally, Tennessee Code Annotated section 36-6-108(a)(8) specifically states that the trial court may order a psychological examination of a parent in a custody dispute pursuant to the mandates of Rule 35. We have previously cautioned, however, that "courts should exercise this power 'with great restraint and with careful attention to the rights of the plaintiff.'" ***Odom v. Odom***, No. M1999-02811-COA-R3-CV, 2001 WL 1543476, at *4 (Dec. 5, 2001) (quoting ***Williams v. Chattanooga Iron Works***, 131 Tenn. 683, 691, 176 S.W. 1031, 1033-34 (Tenn. 1915)). Concerning the "in controversy" and "good cause" requirements of the rule, we have explained:

They are not met by mere conclusory allegations of the pleadings-nor by mere relevance to the case-but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination. Obviously, what may be good cause for one type of examination may not be so for another. The ability of the movant to obtain the desired information by other means is also relevant.

*Kreth v. Kreth*, No. W2002-00983-COA-R10-CV, 2002 WL 1050267, at \*3 (Tenn. Ct. App. May 20, 2002) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 118, 85 S.Ct. 234, 242-43, 13 L.Ed.2d 152 (1964)).

Mother asserts that recusal is necessary in this case because in making the *sua sponte* Rule 35 motion, the trial court made certain factual findings regarding the abuse allegations that show that the trial court has pre-judged the issues in this case "before any proof was heard." These pre-proof findings, Mother contends, are evidence of bias. As an initial matter, we note that whether the trial court erred in ordering the Rule 35 examination is not at issue in this limited, interlocutory appeal. Rather, our jurisdiction in this appeal extends only to the question of whether a pervasive bias existed that necessitates recusal of the trial court. *See Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012) ("In a Tennessee Supreme Court Rule 10B appeal, the only order we may review is the trial court's order that denies a motion to recuse. Pursuant to the rule, we may not review the correctness or merits of the trial court's other rulings[.]"). *But see Krohn v. Krohn*, No. M2015-01280-COA-T10B-CV, 2015 WL 5772549, at \*7 (Tenn. Ct. App. Sept. 22, 2015) (no perm. app. filed) (considering the propriety of a discovery order in determining whether recusal was warranted). In considering this issue, we must always be mindful that adverse rulings, "even if erroneous, numerous and continuous," are generally not sufficient to necessitate recusal. *Alley*, 882 S.W.2d at 821. Recusal on the basis of a trial court's rulings is exceedingly rare and requires more than mere errors; the alleged errors must involve "repeated misapplication[s] of fundamental, rudimentary legal principles in ways that favored [the moving party] substantively and procedurally." *Hoalcraft v. Smithson*, No. M2000-01347-COA-R10-CV, 2001 WL 775602, at \*16 (Tenn. Ct. App. July 10, 2001); *see also Clemmons v. Nesmith*, No. M2016-01971-COA-T10B-CV, 2017 WL 480705, at \*13 (Tenn. Ct. App. Feb. 6, 2017) (noting that no court had ever held that mere errors, even if numerous, were sufficient to show a bias so pervasive as to deny the litigant a fair trial); *see, e.g., Duke*, 398 S.W.3d at 671 (holding that the movant could not show that the trial court's recent rulings were evidence of bias, without any consideration of whether the alleged rulings were numerous or erroneous). In perhaps the only case to hold that recusal was warranted due to errors of fundamental legal principles, the trial court issued twelve erroneous and improper rulings against one party, often ruled without notice to the party or her attorney present, and ultimately disqualified the litigant's attorney without reasonable cause. *Hoalcraft*, 2001 WL 775602, at \*16 (noting that recusal was also based upon the fact that the disqualified

- 10 -

lawyer had since become a judge and shared office space with the trial court); *see also* ***Gentry v. Gentry***, No. M2016-01765-COA-R3-CV, 2017 WL 6623387, at *4 (Tenn. Ct. App. Dec. 28, 2017) (citing the ***Hoalcraft*** rule, but holding that recusal was not warranted under the facts of the case-at-bar); ***Boren v. PC Hill Boren***, No. W2017-02255-COA-T10B-CV, 2017 WL 6549898, at *6 (Tenn. Ct. App. Dec. 21, 2017) (same); ***Eldridge v. Eldridge***, 137 S.W.3d 1, 7 (Tenn. Ct. App. 2002) (expressing some disagreement with the rule set forth in ***Hoalcraft***). Here, Mother's recusal petition alleges only a single erroneous ruling by the trial court—the order requiring Mother to undergo a Rule 35 examination—and does not assert that the trial court has made repeated errors of rudimentary legal principles.[10] As such, this extremely rare basis for recusal is not present in this case.

Neither do we conclude that the trial court's conduct illustrates a pervasive bias against Mother. This Court has described a "pervasive" bias as one that "reflect[s] an utter incapacity to be fair." ***Groves***, 2016 WL 5181687, at *5. As such, "[j]udicial expressions of impatience, dissatisfaction, annoyance, and even anger towards counsel, the parties, or the case, will not ordinarily support a finding of bias or prejudice unless they indicate partiality on the merits of the case." ***Id.*** (citing ***Alley***, 882 S.W.2d at 822). Having reviewed the record in this case, we cannot conclude that the trial court's actions evidence an utter incapacity to be fair.

Here, Mother asserts that "it is unclear where the [trial] [c]ourt got its information on which it appeared so convinced that it deemed any evaluation of [Mother] necessary." Respectfully, the record on appeal indicates exactly where the trial court learned the information concerning the sexual abuse allegations: the parties' pleadings.[11] Both parties' pleadings raised the issue of sexual abuse and/or false allegations of sexual abuse. Indeed, Mother had previously made sexual abuse allegations against Father in 2015 that, if true, would have seriously impacted his ability to parent the child, only to agree to substantially increased visitation with Father.[12] Despite these serious allegations, according to the trial court's order denying recusal, Mother's counter-petition again only sought a slight decrease in Father's parenting time in the current action. Moreover, while we agree that Father's pre-trial brief did not constitute evidence, Father attached to his pre-trial brief an interrogatory response submitted by Mother in which she recounted numerous contacts with police and child services workers concerning allegations against

---

[10] Indeed, Mother insists in her recusal petition that she is not challenging the trial court's order regarding the Rule 35 examination, but only whether the trial court's factual findings that form the basis of the trial court's decision indicate bias. Despite this fact, Mother spends considerable effort in her brief on the requirements of Rule 35.01.

[11] Indeed, Mother admits this fact elsewhere in her petition, noting that the trial court's decision was based upon "a brief (by one party) and pleadings."

[12] Mother asserts that her decisions resulted from misunderstandings and coercion. It appears, however, that Mother was represented by counsel throughout these proceedings. We express no opinion as to whether Mother's decision to settle the prior modification action impacts the veracity of her claims of sexual abuse.

- 11 -

Father, both with regard to her own abuse at his hands and the alleged abuse of the child. Finally, Mother admitted in her first motion to recuse that the child's sexual assault counselor had made multiple reports to DCS concerning abuse of the child. Despite these ongoing allegations, DCS had never intervened in any fashion to prevent Father's visitation with the child, nor does it appear from the record on appeal that Mother sought termination of Father's visitation.

Under these circumstances, we cannot find fault in the trial court's conclusion that the specter of false sexual abuse allegations was raised by the pleadings in this case. This Court has previously recognized the delicate balance that such a circumstance requires: "Any concern about reporting allegations of child sexual abuse must be balanced with the awareness that false accusations of such abuse can be a 'reprehensible tool' against an ex-spouse, remarkable for its 'brutal effectiveness.'" *Keisling v. Keisling*, 196 S.W.3d 703, 722 (Tenn. Ct. App. 2005). In that instance, a parent's conduct in subjecting a child to repeated mental and physical examinations in support of unsubstantiated claims of sexual assault has been held to constitute a material change in circumstances warranting a change in custody. *See id.* at 725.

Mother asserts, however, that the trial court's decision to order her to undergo the Rule 35 examination illustrates that it has prejudged the issue of whether the abuse has actually taken place, prior to the submission of evidence. Specifically, Mother asserts that she

> wanted only to present her evidence, following the Appellee's proof and have a judge decide whether [the child] remained in Tennessee with her or left to live with the Appellee. The judge pre-empted that process. Twenty four hours' notice and a predetermined decision to have her psychologically evaluated took the right to a fair trial from her on the very day her hearing was to begin.

Because of the trial court's pre-judgment, Mother asserts that she "had no opportunity to defend herself against the allegations." Respectfully, we cannot agree. In the first instance, we note that nothing in the trial court's ruling prevents Mother from submitting her own evidence once the trial of this case takes place. Moreover, it appears from the record that the parties' previous parenting plan in which Mother was designated primary residential parent remained in place despite the trial court's order regarding the Rule 35 examination. Additionally, we note that although Mother's counsel objected to the trial court's *sua sponte* motion, nothing in the record indicates that Mother objected to having the Rule 35 hearing the following day; indeed, the parties had previously been scheduled to appear in the trial court that day for the scheduled second day of trial. Thus, the trial court clearly provided Mother with an opportunity to be heard in opposition to the Rule 35 motion; because Mother was not present and only presented her written opposition following the hearing, the trial court issued its ruling without the benefit of her input,

including regarding future visits to the Sexual Assault Center and the payment of the examination fees.[13]

We likewise cannot agree that a reasonable person would conclude that the trial court has prejudged the issues in this case. Certainly, the trial court's decision to make a *sua sponte* motion for a Rule 35 examination indicates his belief that such an examination is warranted. Mother has cited no law, however, that indicates that a trial court may not order a Rule 35 examination on its own motion. Other trial courts appear to have made similar rulings without dispute. *See* ***S.A.M.D. v. J.P.D.***, No. W2013-00314-COA-R3-CV, 2013 WL 5447392, at *1 (Tenn. Ct. App. Sept. 30, 2013) (noting that the trial court had, *sua sponte*, ordered the mother to undergo a psychiatric evaluation; the trial court's order regarding the Rule 35 examination, however, was not at issue on appeal). In the context of criminal prosecutions, a trial court has an obligation to conduct a hearing regarding a defendant's competence when the trial court believes that the defendant is incompetent to stand trial, "even in the absence of a motion seeking such a hearing." ***Berndt v. State***, 733 S.W.2d 119, 122 (Tenn. Crim. App. 1987). A trial court's decision to exercise its authority under Rule 35.01 to move for or order a mental or psychological evaluation of a party based on knowledge learned during the proceedings is simply insufficient to show that the trial court had prejudged the disputed issues in the case; were that true, all trial courts who had ordered Rule 35 examinations would be required to thereafter recuse from hearing the merits of the dispute.[14]

The specific findings and language of the trial judge in this case likewise do not create an appearance of bias. Although the trial judge's oral rulings regarding the Rule 35 examination are somewhat inartful, statements made by a trial court must be "construed in the context of all the facts and circumstances to determine whether a reasonable person would construe those remarks as indicating partiality on the merits of the case." ***Alley***, 882 S.W.2d at 822. The totality of the trial court's orders make clear that having reviewed the pleadings of the parties and the entire record, the trial court determined that it required additional evidence in order to make a decision regarding the custody of the child. The trial court further allowed Mother the opportunity to present countervailing proof before ordering the examination. The trial court's decision, therefore, involves the opposite of prejudgment but rather the trial court's acknowledgement that more information is necessary. As such, "a reasonable person would not construe the [trial court's ruling] as indicating that he had already made a decision about the merits of the case." ***Krohn***, 2015 WL 5772549, at *10.

We express no opinion as the propriety of the trial court's decision to order Mother to undergo a Rule 35 examination at her expense, particularly whether Mother's

---

[13] We also note that Mother filed no motion to alter or amend the trial court's ruling with regard to the restraint on taking the child to the Sexual Assault Center or with regard to the payment of the examination, despite the fact that Mother alleges that she is unable to make this payment.

[14] Of course, were a trial judge to order a Rule 35 examination based upon personal knowledge or ex parte communications, our analysis would likely be different.

mental fitness was in controversy or whether the trial court had "good cause" to order an examination.[15] Indeed, we agree that the procedure utilized by the trial court in this case was unusual. We simply hold that the trial court's decision to lodge a *sua sponte* motion for a Rule 35 examination and to ultimately order an examination in this case do not create an appearance of bias for which recusal is necessary.

### Conclusion

The judgment of the Davidson County Circuit Court is affirmed and this cause is remanded for further proceedings. Costs of this appeal are taxed to Appellant, C.D.B., for which execution may issue if necessary.

$\overline{\hspace{6cm}}$
J. STEVEN STAFFORD, JUDGE

---

[15] As noted by the trial court, Mother is free to seek an interlocutory or extraordinary appeal of the trial court's order regarding the examination, pursuant to the mandates of Rules 9 and 10 of the Tennessee Rules of Appellate Procedure.